Craton LIDDELL, a Minor, et al., Appellants,

and

Mary Puleo, Gerard Puleo, Emma Dannenberg, Robin Dannenberg, Louis Reineri and Mary Anjela Reineri, representing the "Involved Citizens Committee"

United States of America, Appellee,

v.

BOARD OF EDUCATION OF the CITY OF ST. LOUIS and Daniel L. Schlafly, Frederick E. Busse, Gordon L. Benson, Malcolm W. Martin, Mrs. Anita L. Bond, Mrs. Joyce Bowen, Henry M. Grich, Jr. (Secretary), Rev. James L. Cummings (President), Mrs. Erma J. Lawrence, Rev. Donald E. Mayer (Vice President), Lawrence Moser, Charles Harris, and Julius C. Dix, Benjamin M. Price, Robert W. Bernthal, David J. Mahan, Charles Brasfield (School District Superintendent) and Robert E. Wentz (Superintendent of Schools), Appellees,

and

The State of Missouri, Arthur Mallory, Commissioner of Education of the State of Missouri, The State of Missouri Board of Education.

Craton LIDDELL, a Minor, by Minnie Liddell, his Mother and Next Friend, and Minnie Liddell; Joanna Goldsby, a Minor, by Barbara Goldsby, her Mother and Next Friend, and Barbara Goldsby; Deborah Yarber, a Minor, by Samuel Yarber, her Father and Next Friend, and Samuel Yarber; Nathalie Moore, a Minor, by Louise Moore, her Mother and Next Friend, and Louise Moore; Rachelle LeGrand, a Minor, by Lois LeGrand, her Mother and Next Friend, and Lois LeGrand; on behalf of themselves and all other school-age children and their parents residing in the metropolitan school district of the City of St. Louis, Missouri,

and

Earline Caldwell, Lillie Caldwell, Denise Daniels, Dwane Daniels, Gwendolyn Daniels, Cedric Williams, Stephanie Williams, Gloria Williams, Janis Hutcherson, Lee Hutcherson, Robert Smith, Eddie S. Willis and the National Association for the Advancement of Colored People, Appellees,

City of St. Louis, Appellee,

Janice Adams and Jack Adams, Jr., Minors, by Jerrianne Adams, their Natural Guardian and Next Friend, and Jerrianne Adams; Catherine M. Neel and Camille A. Neel, Minors, by Catherine Neel, their Natural Guardian and Next Friend, and Catherine Neel; Mary Edington and Susan Edington, Minors, by Horace Edington, their Natural Guardian and Next Friend, and Horace Edington; The Concerned Parents for Neighborhood Schools,

and

Mary Puleo, Gerard Puleo, Emma Dannenberg, Robin Dannenberg, Louis Reineri and Mary Anjela Reineri, representing the "Involved Citizens Committee"

United States of America, Appellee,

v.

BOARD OF EDUCATION OF the CITY OF ST. LOUIS and Daniel L. Schlafly, Frederick E. Busse, Gordon L. Benson, Malcolm W. Martin, Mrs. Anita L. Bond, Mrs. Joyce Bowen, Henry M. Grich, Jr. (Secretary), Rev. James L. Cummings (President), Mrs. Erma J. Lawrence, Rev. Donald E. Mayer (Vice President), Lawrence Moser, Charles Harris, and Julius C. Dix, Benjamin M. Price, Robert W. Bernthal, David J. Mahan, Charles Brasfield (School District Superintendent) and Robert E. Wentz (Superintendent of Schools), Appellees,

and

The State of Missouri, Arthur Mallory, Commissioner of Education of the State of Missouri, The State of Missouri Board of Education, Appellant.

Craton LIDDELL, a Minor, by Minnie Liddell, his Mother and Next Friend, and Minnie Liddell; Joanna Goldsby, a Minor, by Barbara Goldsby, her Mother and Next Friend, and Barbara Goldsby; Deborah Yarber, a Minor, by Samuel Yarber, her Father and Next Friend, and Samuel Yarber; Nathalie Moore, a Minor, by Louise Moore, her Mother and Next Friend, and Louise Moore; Rachelle LeGrand, a Minor, by Lois LeGrand, her Mother and Next Friend, and Lois LeGrand, on behalf of themselves and all other school-age children and their parents residing in the metropolitan school district of the City of St. Louis, Missouri, Appellants,

and

Earline Caldwell, Lillie Caldwell, Denise Daniels, Dwane Daniels, Gwendolyn Daniels, Cedric Williams, Stephanie Williams, Gloria Williams, Janis Hutcherson, Lee Hutcherson, Robert Smith, Eddie S. Willis and the National Association for the Advancement of Colored People,

City of St. Louis,

Janice Adams and Jack Adams, Jr., Minors, by Jerrianne Adams, their Natural Guardian and Next Friend, and Jerrianne Adams; Catherine M. Neel and Camille A. Neel, Minors, by Catherine Neel, their Natural Guardian and Next Friend, and Catherine Neel; Mary Edington and Susan Edington, Minors, by Horace Edington, their Natural Guardian and Next Friend, and Horace Edington, The Concerned Parents for Neighborhood Schools,

and

Mary Puleo, Gerard Puleo, Emma Dannenberg, Robin Dannenberg, Louis Reineri and Mary Anjela Reineri, representing the "Involved Citizens Committee"

United States of America,

v.

BOARD OF EDUCATION OF the CITY OF ST. LOUIS and Daniel L. Schlafly,

Frederick E. Busse, Gordon L. Benson, Malcolm W. Martin, Mrs. Anita L. Bond, Mrs. Joyce Bowen, Henry M. Grich, Jr. (Secretary), Rev. James L. Cummings (President), Mrs. Erma J. Lawrence, Rev. Donald E. Mayer (Vice President), Lawrence Moser, Charles Harris, and Julius C. Dix, Benjamin M. Price, Robert W. Bernthal, David J. Mahan, Charles Brasfield (School District Superintendent) and Robert E. Wentz (Superintendent of Schools), Appellees,

and

The State of Missouri, Arthur Mallory, Commissioner of Education of the State of Missouri, The State of Missouri Board of Education, Appellees.

Craton LIDDELL, a Minor, by Minnie Liddell, his Mother and Next Friend, and Minnie Liddell; Joanna Goldsby, a Minor, by Barbara Goldsby, her Mother and Next Friend, and Barbara Goldsby; Deborah Yarber, a Minor, by Samuel Yarber, her Father and Next Friend, and Samuel Yarber; Nathalie Moore, a Minor, by Louise Moore, her Mother and Next Friend, and Louise Moore; Rachelle LeGrand, a Minor, by Lois LeGrand, her Mother and Next Friend, and Lois LeGrand, on behalf of themselves and all other school-age children and their parents residing in the metropolitan school district of the City of St. Louis, Missouri,

and

Earline Caldwell, Lillie Caldwell, Denise Daniels, Dwane Daniels, Gwendolyn Daniels, Cedric Williams, Stephanie Williams, Gloria Williams, Janis Hutcherson, Lee Hutcherson, Robert Smith, Eddie S. Willis and the National Association for the Advancement of Colored People, Appellants,

City of St. Louis,

Janice Adams and Jack Adams, Jr., Minors, by Jerrianne Adams, their Natural Guardian and Next Friend, and Jer-

rianne Adams; Catherine M. Neel and Camille A. Neel, Minors, by Catherine Neel, their Natural Guardian and Next Friend, and Catherine Neel; Mary Edington and Susan Edington, Minors, by Horace Edington, their Natural Guardian and Next Friend, and Horace Edington, The Concerned Parents for Neighborhood Schools,

and

Mary Puleo, Gerard Puleo, Emma Dannenberg, Robin Dannenberg, Louis Reineri and Mary Anjela Reineri, representing the "Involved Citizens Committee"

United States of America, Appellee,

v.

BOARD OF EDUCATION OF the CITY OF ST. LOUIS and Daniel L. Schlafly, Frederick E. Busse, Gordon L. Benson, Malcolm W. Martin, Mrs. Anita L. Bond, Mrs. Joyce Bowen, Henry M. Grich, Jr. (Secretary), Rev. James L. Cummings (President), Mrs. Erma J. Lawrence, Rev. Donald E. Mayer (Vice President), Lawrence Moser, Charles Harris, and Julius C. Dix, Benjamin M. Price, Robert W. Bernthal, David J. Mahan, Charles Brasfield (School District Superintendent) and Robert E. Wentz (Superintendent of Schools), Appellee,

and

The State of Missouri, Arthur Mallory, Commissioner of Education of the State of Missouri, The State of Missouri Board of Education.

Craton LIDDELL, a Minor, by Minnie Liddell, his Mother and Next Friend, and Minnie Liddell; Joanna Goldsby, a Minor, by Barbara Goldsby, her Mother and Next Friend, and Barbara Goldsby; Deborah Yarber, a Minor, by Samuel Yarber, her Father and Next Friend, and Samuel Yarber; Nathalie Moore, a Minor, by Louise Moore, her Mother and Next Friend, and Louise Moore; Rachelle LeGrand, a Minor, by Lois LeGrand, her Mother and Next Friend, and Lois LeGrand, on behalf of themselves

and all other school-age children and their parents residing in the metropolitan school district of the City of St. Louis, Missouri,

and

Earline Caldwell, Lillie Caldwell, Denise Daniels, Dwane Daniels, Gwendolyn Daniels, Cedric Williams, Stephanie Williams, Gloria Williams, Janis Hutcherson, Lee Hutcherson, Robert Smith, Eddie S. Willis and the National Association for the Advancement of Colored People, Appellants,

City of St. Louis,

Janice Adams and Jack Adams, Jr., Minors, by Jerrianne Adams, their Natural Guardian and Next Friend, and Jerrianne Adams; Catherine M. Neel and Camille A. Neel, Minors, by Catherine Neel, their Natural Guardian and Next Friend, and Catherine Neel; Mary Edington and Susan Edington, Minors, by Horace Edington, their Natural Guardian and Next Friend, and Horace Edington, The Concerned Parents for Neighborhood Schools,

and

Mary Puleo, Gerard Puleo, Emma Dannenberg, Robin Dannenberg, Louis Reineri and Mary Anjela Reineri, representing the "Involved Citizens Committee"

United States of America, Appellee,

v.

BOARD OF EDUCATION OF the CITY OF ST. LOUIS and Daniel L. Schlafly, Frederick E. Busse, Gordon L. Benson, Malcolm W. Martin, Mrs. Anita L. Bond, Mrs. Joyce Bowen, Henry M. Grich, Jr. (Secretary), Rev. James L. Cummings (President), Mrs. Erma J. Lawrence, Rev. Donald E. Mayer (Vice President), Lawrence Moser, Charles Harris, and Julius C. Dix, Benjamin M. Price, Robert W. Bernthal, David J. Mahan, Charles Brasfield (School District Superintend-

ent) and Robert E. Wentz (Superintendent of Schools), Appellees,

and

The State of Missouri, Arthur Mallory, Commissioner of Education of the State of Missouri, The State of Missouri Board of Education, Appellees.

Nos. 80–1458, 80–1494, 80–1531, 80–1599 and 80–1735.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1980.

Decided Feb. 13, 1981.

Order March 19, 1981.

Rehearing and Rehearing En Banc Denied March 19, 1981.

Lashly, Caruthers, Thies, Rava & Hamel, a Professional Corporation, John H. Lashly, Paul B. Rava, Kenneth C. Brostron, Stephen A. Cooper, Alan D. Pratzel, St. Louis, Mo., for appellees.

William E. Caldwell and Richard B. Fields, Ratner & Sugarmon, Memphis, Tenn., Thomas I. Atkins, Gen. Counsel, NAACP, New York City, Charles H. Staples, St. Louis, Mo., for Caldwell plaintiffs-intervenors-appellees.

Robert D. Kingsland, U. S. Atty., St. Louis, Mo., Drew S. Days, III, Asst. Atty. Gen., Jessica Dunsay Silver, George Schneider, Attys., Dept. of Justice, Washington, D. C., for United States.

Robert L. Hyder, Hyder, McHenry & Prenger, Jefferson City, Mo., for amici curiae.

John Ashcroft, Atty. Gen., Robert Presson, Asst. Atty. Gen., Jefferson City, Mo., for State appellants.

Anthony J. Sestric, Joseph S. McDuffie, and William P. Russell, St. Louis, Mo., for appellants.

Before HEANEY, BRIGHT and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

We are asked by the State of Missouri and by three groups of parents to set aside the plan of the United States District Court for the Eastern District of Missouri for integrating the public schools of St. Louis. The State argues that it has been required to pay too much toward the integration plan and that it should not be ordered to participate in developing either a voluntary or an involuntary inter-district integration program. The white parent group complains that the district court plan goes too far and is unfair to white students. The black parent groups assert that the plan doesn't go far enough in that it leaves some schools in North St. Louis all black. All of the appellants assert that the district court erred in failing to find that the United States contributed to the segregation of the St. Louis school district and to require it to pay a substantial portion of the cost of integrating the school system.

We affirm the decision of the district court. The desegregation plan was designed in accordance with the letter and spirit of the mandate of this Court and it meets constitutional requirements. If the plan is fully implemented in the same spirit and with the continuing cooperation of parents, students, teachers and community and religious leaders, a firm foundation will have been laid for affording the children of St. Louis a quality education in a racially neutral school system.

We take judicial notice of the fact that the Board of Education and one of the parent groups have filed amended complaints in the district court, asking the court to require inter-district integration with the schools of St. Louis, St. Charles and Jefferson Counties. We express no opinion as to the merits of the proposed amendments. We do, however, emphasize that the pendency of these petitions must not be permitted to delay the full and complete implementation of every feature of the plan developed by the district court and approved by this Court, including those sections of the plan that relate to inter-district integration.

I

This case, filed in district court in 1972, is before this Court for the third time.[1] When it was first here, we remanded it with directions to permit the Caldwell parent group to intervene as plaintiffs. *See Liddell v. Caldwell*, 546 F.2d 768 (8th Cir. 1976), cert. denied, 433 U.S. 914, 97 S.Ct. 2987, 53

---

1. For a detailed account of the procedural history of this case, *see Adams v. United States*, 620 F.2d 1277, 1281–1284 (8th Cir.) (en banc),

cert. denied, 449 U.S. 826, 101 S.Ct. 88, 66 L.Ed.2d 29 (1980).

L.Ed.2d 1100 (1977). When it was next here, we reversed the district court, concluding that the plaintiffs had clearly proven that the defendants had established and maintained a racially segregated school system in violation of the plaintiffs' constitutional rights. *See Adams v. United States,* 620 F.2d 1277 (8th Cir.) (en banc), *cert. denied,* 449 U.S. 826, 101 S.Ct. 88, 66 L.Ed.2d 29 (1980). We remanded the case to the district court with the following admonition:

> Segregation in the elementary and secondary schools in St. Louis must now be eliminated. An integrated system must be devised and implemented promptly. In no other way can the constitutional right to an equal educational opportunity be assured to all children of St. Louis. With careful planning, expert advice, broad community participation and good faith, a plan to integrate the schools can be devised and implemented which will meet constitutional requirements.

*Id.* at 1291–1292.

Only one party—the Adams plaintiffs—asked the Supreme Court to review our decision; the Court denied the petition for certiorari.

On remand, the district court made every effort to comply with our charge. It established an interracial citizen's advisory committee to promote community involvement in the proceedings; it appointed Dr. Gary Allen Orfield to provide expert assistance in the preparation of a desegregation plan; it held extensive evidentiary hearings on proposed plans and the procedures involved in implementing them; and after a careful consideration of all the evidence, it approved a comprehensive desegregation plan to be effective at the start of the 1980–1981 school year. *See Liddell v. Board of Educ.,* 491 F.Supp. 351 (E.D.Mo.1980).

## II

■ The plan approved by the district court is a modified form of the "Orfield approach" sanctioned by this Court in the previous appeal. *See Adams v. United States, supra,* 620 F.2d at 1293–1296. The essential elements of the plan include (1) reassigning students to achieve the greatest possible number of desegregated schools (defined as 30–50% black); (2) establishing magnet and alternative schools designed to attract students of all races from throughout the St. Louis area; (3) organizing a middle school system to facilitate clustering, pairing and other integrative efforts; (4) instituting and expanding specialty and part-time integrated programs; (5) facilitating permissive integrative transfers; (6) initiating cooperative inter-district desegregation programs; (7) providing for integration of and special training for school personnel; and (8) developing a comprehensive community relations program.

Although the plan reflects the fact that it is not possible to fully integrate every school in the St. Louis system, the district court faithfully followed the directions of this Court by providing a variety of integrative experiences and enhanced educational opportunities for students remaining in the predominately black schools.

The district court estimated that the overall cost of the desegregation plan would be approximately $22.1 million. The court directed the State of Missouri to pay one-half of the actual cost of desegregation. To finance the remaining 50%, the court ordered the Board of Education to transfer approximately $4.7 million out of its debt retirement account, noting that federal funds would cover the balance. Federal funding to assist in the integration process exceeded $7 million for the 1980–1981 school year.

## III

Four parties—the Liddell plaintiffs, the Caldwell plaintiffs, the Adams plaintiffs, and the State of Missouri defendants[2]—ap-

---

**2.** The "State defendants" include the State of Missouri and its Board of Education, as well as the following Missouri officials: the Governor, the Attorney General, the Treasurer, the Commissioner of Education, the Commissioner of Administration, and the individual members of the Missouri Board of Education. Because their interests are identical and they have filed

peal from the district court's order approving the desegregation plan. For convenience, the issues on appeal may be divided into two categories: those relating to the design of the plan and those relating to the financing of the plan. We first consider the challenges to the design of the plan.

### A. Design

1. The Liddell and Caldwell plaintiffs contend that the plan approved by the district court is constitutionally deficient because it does not go far enough to remedy the effects of the defendants' discriminatory practices. Specifically, they argue that the district court erred in holding that schools with 30–50% black enrollments were to be considered integrated. Their position appears to be that the only constitutionally permissible means of integrating the St. Louis system was to reassign students so that each school had the same racial mix as the district as a whole—approximately 76% black and 24% white.

We cannot agree that the options available to the district court were so limited. In our decision of March 3, 1980, we specifically stated that a plan similar to the one adopted by the district court would meet constitutional requirements. In so doing, we accepted the testimony of Dr. Orfield that such a plan would have the best chance of successfully integrating the St. Louis schools and stabilizing neighborhoods already integrated.

In affirming this aspect of the plan, we emphasize that students remaining in the predominately black schools in St. Louis are not left completely untouched by the new system. Provisions affecting the remaining black schools include magnet and alternative programs, new and expanded specialty programs, permissive intra-district transfers, staff desegregation, staff development, a City/County integrated vocational program, and voluntary pupil exchanges with suburban school districts. We also emphasize that the plan requires the Board of Education to spend a substantial portion of the $22 million desegregation budget to improve the quality of education in those schools that remain all black and continuing expenditures are required for this purpose. Moreover, although a number of all-black or virtually all-black schools remain in St. Louis under the plan, the new system does eliminate the all-white schools from the district. Thus, although the degree of actual integration achieved under the plan is not optimal, we reiterate our view that under all the circumstances, the plan is a constitutional one and has a better chance of providing a quality integrated education for the school children of St. Louis than any of the other plans that were presented by the parties to this lawsuit.[3]

2. In contrast with the position of the Liddell and Caldwell plaintiffs, the Adams plaintiffs argue that the district court has gone too far in the intra-district pupil reassignment portion of its plan.[4] They note that the Court has included in the reassignment plan a number of schools that were between 30 and 50% black prior to desegregation. These schools, they contend, should not have been required to participate in the plan in view of this Court's determination that the boundary lines and assignment patterns for schools with 30–50% black enrollments should remain substantially changed.

a joint brief, we refer to these parties collectively as the State of Missouri.

3. We note that the plan approved by the district court appears to permit up to a 15% deviation from the 30–50% black guideline used to define integrated schools. In our view, a deviation of this magnitude should be permitted only rarely and then only after the court has determined, following a hearing in which the parties are given an opportunity to present their views, that allowing the variance will not impair the overall effectiveness of the desegregation plan.

4. The Adams group also claims that the Board of Education relied on false enrollment and other data in developing the plan. Although there may be minor discrepancies in some of the figures, we find no support in the record for the appellants' position that the information relied upon was so inaccurate that the plan must be invalidated.

This contention is without merit. Although reassignment does affect some schools that had a pre-plan enrollment of 30–50% black, we are satisfied that their inclusion does not violate our order of March 3, 1980. First, it turned out to be necessary to include some of these schools to accommodate the change from a two-tier (kindergarten–8; 9–12) to a three-tier (kindergarten–5; 6–8; 9–12) system, a change that was designed to help facilitate clustering and other integrative efforts and to improve the overall educational opportunities in St. Louis. Second, it appears from the record that many of the schools cited by the appellant as having a pre-plan black population of between 30 and 50% had such a racial mix because students were transported to them, not because the neighborhoods surrounding the schools were integrated. Still other schools were included because their black enrollment percentage has increased rapidly in recent years, indicating that their black population would be likely to exceed 50% in the near future. When read in context, it is clear that our decision of March 3 was intended to minimize the transportation of students and to encourage the development and maintenance of integrated schools in integrated neighborhoods. In our view, the plan approved by the district court is faithful to this concept.

3. The State of Missouri is the sole challenger to paragraph 12 of the district court's order, which provides for various forms of inter-district relief. The State argues that the district court is without authority to order the preparation of any inter-district plan unless and until the suburban districts are joined as parties to the lawsuit. The Adams group, by contrast, argues that the court erred in not developing a more comprehensive inter-district remedy.

Paragraph 12 of the district court's order provides in part:

12. The State defendants, the United States, and the St. Louis Board of Education are ordered and directed as follows:

a) To make every feasible effort to work out with the appropriate school districts in the St. Louis County and develop, for 1980–81 implementation, a voluntary, cooperative plan of pupil exchanges which will assist in alleviating the school segregation in the City of St. Louis, and which also insures that inter-district pupil transfers will not impair the desegregation of the St. Louis school district ordered herein, and submit such plan to the Court for approval by July 1, 1980.

b) To develop and submit to the Court by November 1, 1980, a plan for the consolidation or merger and full desegregation of the separate vocational educational programs operated by the Special District of St. Louis County and the school district of the City of St. Louis, for implementation in the 1981–82 school year.

c) To develop and submit to the Court by November 1, 1980, a suggested plan of inter-district school desegregation necessary to eradicate the remaining vestiges of government-imposed school segregation in the City of St. Louis and St. Louis County.

491 F.Supp. at 353.

The appellees contend that this Court should not hear the State's challenge at this time because the directives contained in paragraph 12 are neither final judgments appealable under 28 U.S.C. § 1291 nor orders granting or denying injunctive relief appealable under 28 U.S.C. § 1292. Although the line between appealable and nonappealable orders is rarely clear in a case in which the district court retains jurisdiction over a developing desegregation plan, we are persuaded that we have jurisdiction over these issues in this appeal.[5]

5. In support of their position that the provisions of paragraph 12 are nonappealable, the appellees cite to cases in which appeals courts ruled that orders directing school boards to formulate desegregation plans were nonappealable. *See Bradley v. Milliken*, 468 F.2d 902 (6th Cir.), *cert. denied*, 409 U.S. 844, 93 S.Ct. 45, 34 L.Ed.2d 83 (1972); *Taylor v. Board of Educ.*, 288 F.2d 600 (2d Cir. 1961). The State of Missouri distinguishes the cases cited by the

Accordingly, we consider the challenge to paragraph 12 on the merits, examining each section of the paragraph separately.

Section (a) of paragraph 12 directs the parties to "make every feasible effort" to work out a voluntary plan of inter-district pupil exchanges to be implemented in the 1980–1981 school year. Because the plan is to be voluntary, no question is raised about whether the district court will be able to enforce the plan once it is drawn up. Under the terms of the order, the plan is to be designed to "assist in alleviating the school segregation in the City of St. Louis [and to ensure] that inter-district pupil transfers will not impair the desegregation of the St. Louis school district." 491 F.Supp. at 353. Thus, the voluntary exchanges contemplated by section (a) must be viewed as a valid part of the attempt to fashion a workable remedy within the City.

Section (b) of paragraph 12 is also consistent with the district court's responsibility to order a remedy for existing constitutional violations. The district court specifically found that the State of Missouri's establishment and maintenance of the separate Special District for vocational education was "part and parcel of its failure to take affirmative steps to eradicate root and branch the dual system it once formally mandated." 491 F.Supp. at 358. Section (b), therefore, was designed to remedy a violation of the State of Missouri. Moreover, the Special District has now been joined as a party defendant in this lawsuit. We see no reason to prevent the opening of a consolidated integrated vocational school at the beginning of the 1981–1982 school year.

Section (c) of paragraph 12 is also within the authority of the district court. By its terms, that section required the parties to develop and submit to the court by November 15, 1980, a "suggested" inter-district plan "to eradicate the remaining vestiges of government-imposed school segregation in the City of St. Louis and St. Louis County." We must read the term "government-imposed" to mean "found to be government-imposed by a court." Therefore, to the extent that the segregation was imposed by County school districts which are not parties to the lawsuit and which have not been designated as constitutional violators, it cannot be considered to be "government-imposed." But, to the extent any such segregation was imposed by the State or other defendants, and to the extent those defendants have the power to remedy the violation, it is proper for the district court to order them to take steps to do so.

Furthermore, we recognize that the Board of Education and the Caldwell plaintiffs have petitioned the district court to amend their complaints to add as parties defendant the school districts in the three-county area surrounding the City of St. Louis. We express no opinion on the merits of those motions, but we emphasize that the current parties have a responsibility to comply with the terms of the district court order, including the provisions of paragraph 12, regardless of the disposition of the motions pending before the district court.[6]

4. The Adams and the Liddell plaintiffs maintain that the district court erred in

---

appellees by noting that the school board in each of those cases was ordered to prepare a remedy consistent with its judicially determined constitutional liability. Here, the State argues, the district court exceeded its jurisdiction by ordering the parties to prepare a plan involving other school districts, even though it is conceded that the suburban districts cannot be considered to be constitutional violators unless and until they are joined as parties to the litigation. While the question is not free from doubt, we are satisfied that we have jurisdiction to hear an appeal from a remedial order that, on its face, arguably involves potential parties who have not yet had their day in court.

6. We note that the district court has found it necessary to extend the deadlines for filing the proposed plans under paragraph 12(a)–(c) and that it is apparently having some difficulty in getting complete and adequate proposals from the parties. We take this opportunity to stress the legal obligation of the State of Missouri, the United States and the Board of Education to develop and implement the plans contemplated by paragraph 12. It is imperative that the district court countenance no excuse for further delay.

approving the personnel assignment portion of the desegregation plan. Both appellants oppose the court's adoption of a "Singleton" plan of personnel assignment, which provides that the black to white staff ratio in each school is to be substantially equal to the district-wide black to white staff ratio. They argue that the Singleton formula is inconsistent with the following directive of this Court: "The consent decree, insofar as it pertains to faculty integration, shall be fully implemented and additional steps taken to ensure that school personnel at every level will be integrated." *Adams v. United States, supra,* 620 F.2d at 1297. In our view, the plan approved by the district court goes beyond what we required, at least with respect to classroom teachers. We will not quarrel with that decision.

The Liddell and Adams groups argue that the personnel integration provision of the plan is inadequate because it fails to integrate the administrative staff. The district court's order provided that a Singleton assignment formula should apply to "[a]ll principals, teachers, and other certified staff who work directly with children at a school." 491 F.2d at 354. The court also stated, "The same criteria shall apply to non-certificated personnel." *Id.* We read these statements to provide that the Singleton assignment scheme is to apply to *all* principals, *all* teachers and *all* non-certificated personnel, as well as to certificated staff members who work directly with children. It appears that nothing is said about administrators other than principals. That is not surprising, inasmuch as the Singleton approach matches district-wide race ratios with staff ratios at each school. There is no way, therefore, to apply that formula directly to administrators who are not assigned to specific schools. We assume that as to such personnel, the prior directive of this Court will be followed, and are confident that if that phase of the plan has not yet been implemented, it will be by the opening of the 1981–1982 school year.

5. The Adams and Liddell plaintiffs also join in challenging the manner in which the burdens of desegregation are distributed among the students. The Adams group contends that the burdens are borne disproportionately by the white students, while the Liddell group asserts that the black students suffer the greatest adverse effects under the plan.

We find no support in the record for either of these positions. The Adams appellants base their argument on the fact that slightly over one-half of the students transported to schools out of their neighborhoods are white even though white students comprise only 24% of the school population. In our view, that is not sufficient to show that the white students bear a disproportionate burden. In a situation such as that in St. Louis, where it is necessary to exchange black students with white students in order to integrate the schools, the number of whites who are transported will almost necessarily be approximately equal to the number of blacks who are similarly transported. Under these circumstances, the percentage of each race transported is not controlling.

The Adams group also argues that the black students reap a disproportionate amount of the benefits from the plan. That assertion simply has no support in the record.

The basis of the Liddell group's challenge is essentially that some black children remain in predominately black schools under the plan.[7] We have answered that complaint earlier in this opinion.

6. The Caldwell group raises two issues concerning the composition and operation of the citizens' committees appointed by the district court. In our March 3 opinion, we stated,

The Board of Education is to be given the principal responsibility for developing and implementing a comprehensive plan

---

7. The Liddell plaintiffs also assert that the district court violated this Court's mandate by failing to establish an educational park in the City of St. Louis. In our March 3 opinion, we did refer to an educational park as one possible

method of providing enhanced educational opportunities for St. Louis students. We did not, however, require the district court to establish such a park.

to integrate the school system. In fulfilling this responsibility, the Board shall work with the parties of this lawsuit, a broadly based interracial committee to be named by the district court and an expert, or experts, to be named by the district court.

*Adams v. United States, supra,* 620 F.2d at 1295 (footnote omitted).

In accordance with this directive, the district court appointed a twenty-member biracial "Citizens' Committee" to assist the Board of Education in developing the desegregation plan. The members of the Citizens' Committee were chosen from lists provided by the parties; four of the twenty members were selected from the list submitted by the Caldwell plaintiffs. Following approval of the plan, the court disbanded the Citizens' Committee and adopted a new "Desegregation Monitoring and Advisory Committee." The new group was composed of twelve members, one-half of whom were members of the original Citizens' Committee.

The Caldwell plaintiffs assert that they are not adequately represented on this new committee. The record shows, however, that two of the twelve Monitoring Committee members, including the vice chairperson, were originally nominated for the Citizens' Committee by the Caldwell group. It also shows that six of the twelve members on the Monitoring Committee are black. In light of these facts, no abuse of discretion has been demonstrated.

The Caldwell appellants' second objection to the Monitoring Committee is that the district court erred in expressly authorizing *ex parte,* oral communication between the court and the Monitoring Committee chairperson and vice chairperson. We agree that all parties are entitled to know of the advice given the court by the Committee. *See Bradley v. Milliken,* 620 F.2d 1143, 1156–1158 (6th Cir.), *cert. denied,* 449 U.S. 870, 101 S.Ct. 207, 66 L.Ed.2d 80 (1980). The best practice would be to reduce to writing all communications between the court and the Committee, make them part of the record, and provide them to counsel for the parties. If oral contact is deemed necessary by the district court, the parties should, where possible, be given notice and opportunity to be present when the oral report is received. To this point, however, no prejudice has been shown from any alleged *ex parte* contacts.

B. *Financing*

1. All four of the appellants join in mounting the primary challenge to the financing of the desegregation plan, arguing that the district court erred in failing to directly order relief against the United States government.[8]

■ In support of their position, the appellants point to evidence in the record, as well as to statements of the district court and this Court, indicating that the policies and practices of the federal government have been a significant cause of segregation in the St. Louis school system. The fact

---

**8.** The claims of the Caldwell appellants go beyond the financial liability of the United States. They maintain that the government should be required to take affirmative steps to reverse the discriminatory effects of federal housing and other policies. This issue has not been tried in this lawsuit. Accordingly, the district court did not err in refusing to grant affirmative relief against the United States.

We note in passing that the district court has taken steps to ensure that federally assisted housing programs are operated so as to aid in the implementation of school desegregation in St. Louis. In paragraph 12(d) of its order, the district court directed the State defendants, the United States and the St. Louis Board of Education

[t]o develop and submit to the Court by November 1, 1980, in conjunction with the Community Development Agency of the City of St. Louis, a suggested plan for insuring that the operation of federally-assisted housing programs in the St. Louis metropolitan area will facilitate the school desegregation ordered herein.

491 F.Supp. at 354.

No party has challenged this aspect of the district court's order. The parties have submitted plans in accordance with the order, and we approve of this effort to facilitate implementation of the overall desegregation plan.

remains, however, that no party has named the United States as a defendant and alleged that it engaged in discriminatory practices.[9] The real question, therefore, is whether the district court abused its discretion in refusing to grant the Caldwell plaintiffs' motion to amend its complaint to seek relief against the United States.

Under all the circumstances of this case, we find no abuse of discretion. The Caldwell plaintiffs' motion to amend was filed on May 23, 1980, one week after the district court concluded evidentiary hearings on the proposed desegregation plans. At that time, the district court was operating under a stringent time schedule, mandated by this Court, requiring that the plan be implemented by the beginning of the 1980–1981 school year. Given this need to expedite approval and implementation of the plan and the likely delay attendant in adding new theories of liability against a new defendant, we hold that the district court did not abuse its discretion in refusing to grant the Caldwell group's motion to amend at that time.

In affirming the district court's refusal to grant relief against the United States, we are mindful of the significant financial role played by the federal government in implementing the St. Louis desegregation plan. In its order approving the plan, the district court expressly recognized that a substantial portion of the funding for integration would come from the United States government. The court directed the United States Department of Education to expedite the processing of funding applications for St. Louis under the Emergency School Aid Act (ESAA), 20 U.S.C. § 3191 *et seq.* Apparently, this direction was heeded since the St. Louis school system received over $7 million in ESAA funds—nearly one-third of the desegregation budget—to cover the costs of implementing the plan during the 1980–1981 school year. Moreover, the evidence in the record gives us no reason to believe that similar funding will not be available to continue implementation of the plan for the foreseeable future. Under these circumstances, we are unwilling to hold that the district court erred by failing to expressly order the United States to pay for part of the desegregation plan.

■ 2. The State of Missouri vigorously contends that it should have no part in paying for the costs of integration because its actions did not violate the Constitution. More precisely, the State argues that this Court did not overrule the district court's earlier finding of non-liability on the part of the State. Thus, the State asserts, the district court was precluded on remand from finding the State to be a constitutional violator.

This contention is wholly without merit. In our March 3 opinion, we specifically recognized the causal relationship between the actions of the State of Missouri and the segregation existing in the St. Louis school system. Furthermore, we expressly directed the district court to apportion the costs of the desegregation plan among the defendants. *Adams v. United States, supra,* 620 F.2d at 1295 n.28. These statements amount to a clear reversal of the district court's findings concerning the liability of the State, and the State has chosen not to seek review of that decision in the Supreme Court. At the very least, our opinion left the district court free to review its earlier conclusions. We will not disturb its decision to do so.

■ 3. As an alternative argument, the State contends that, even if it was proper to require it to fund part of the plan, it has been ordered to pay too great a share. The State maintains that the amount it has been ordered to pay is not commensurate with the degree of its constitutional violation. In addition, it argues that the desegregation plan budget is inflated and that the State's portion of the funding is too great as a result. We agree with neither contention.

**9.** The Adams plaintiffs did name the United States as a defendant in its complaint in intervention. Rather than complain of the government's segregative acts, however, the Adams group alleged that the United States illegally required the St. Louis school district to take steps to desegregate the schools as a condition to release of federal funds for the district.

After reviewing the discriminatory action and inaction of the State of Missouri, the district court concluded that "the State defendants stand before this Court as primary constitutional wrongdoers who have abdicated their affirmative remedial duty." 491 F.Supp. at 359. This conclusion has ample support in the record; as noted, we recognized as much in the prior appeal. It was well within the discretion of the district court, therefore, to order the State to pay one-half of the costs of integrating the St. Louis school system.

The State's complaints about the desegregation plan budget are that it includes items that are not properly considered part of the integration process and that certain savings were not taken into account. We need not review the specific items in the plan budget, however, because it is clear that the approved budget is only an estimate of the expected costs of implementing the plan. The district court's order requires the State to pay one-half of the *actual* costs of implementing the desegregation plan; the budget is used only to set a ceiling on the amount of the State's participation. In addition, the district court specifically directed that "continued efforts be made to reduce the actual costs of implementation." 491 F.Supp. at 352.[10]

■ 4. The Adams' plaintiffs contend that the district court erred in directing the Board of Education to transfer approximately $4.6 million in excess funds from its debt retirement account to be used to make the building modifications necessitated by the desegregation plan. This complaint is based on the assertion that the Board of Education was without authority under Missouri law to collect surplus funds in the account reserved for the retirement of bonds. The Board of Education responds that the money in the debt retirement account was collected in accordance with statutory guidelines following annual public hearings, and that no one has complained of the accumulated surplus prior to this time.

We decline to rule on whether Missouri law authorized the Board of Education to accumulate funds in its debt retirement account. This is surely not the most suitable forum for determining the propriety of the Board of Education's bond issues. We are satisfied that the district court had discretion to order the transfer of funds already collected and held by the Board.

To summarize, we affirm the judgment of the district court and commend it for the manner and promptness with which it implemented the earlier decision of this Court. We remand the matter to the district court with directions to continue with the implementation of its plan in accordance with the slight modifications made by this opinion. All parties will bear their own costs in this appeal.

### ORDER

This Court has before it a number of motions relating to the above entitled case.

### I

The motion of the Special School District of St. Louis County, Missouri, to intervene on appeal for the purpose of filing a petition for rehearing or rehearing en banc is granted. The petition for rehearing or rehearing en banc is denied, the latter by a unanimous vote of the Court.

The Special School District asks us to review our decision of February 13, 1981, asserting that that decision is inconsistent with an August 15, 1980, order of this Court which denied the Special District's petition for a writ of prohibition.

We do not agree. The primary issue addressed by this Court in its August 15 ruling was whether the Special District would be provided with a full and fair opportunity to present its views to the district court prior to being ordered to remedy its constitutional violations, if any.

---

10. Like the State of Missouri, the Adams appellants contest the validity of the budget on the ground that it includes items not necessary for integration. Inexplicably, the Adams group also takes the seemingly inconsistent position that the amount allocated by the budget is insufficient to desegregate the St. Louis schools. For the reasons stated in the text, we need not decide the validity of these challenges to the budget.

The district court correctly perceived the thrust of our August 15 ruling. In a December 19, 1980, order denying the Special District's motion to disqualify him from further proceedings in the case, Judge Meredith declared, "The Special District can rest assured that before any action is taken that would affect it, it will have ample opportunity to be heard." Similarly, in an order dated March 4, 1981, Judge Hungate reiterated the view that voluntary cooperative efforts with the School District of the City of St. Louis would result in no prejudice to the legal rights of the Special District:

> This Court emphasizes that a 12(b) *plan* has merely been filed with the Court as required by Judge Meredith's order of May 21, 1980. No action has or will be taken until a hearing has been held during which the [Special District] will have ample opportunity to be heard. [Emphasis included.]

Judge Hungate has now set May 11, 1981, as the hearing date for questions involving the Special District, and he has established a discovery and briefing schedule designed to facilitate resolution of the issues and provide the parties with full opportunity to be heard. We express no opinion as to the merits of the issues to be heard by Judge Hungate.

## II

The Caldwell plaintiffs petition this Court for rehearing, modification and/or clarification of this Court's decision of February 13, 1981. They ask this Court to modify its February 13, 1981, opinion "to reflect the fact that paragraph 12(c) of Judge Meredith's order of 21 May 1980 was amended by him on 17 September 1980, and that proceedings now pending in the district court may moot the controversy over paragraph 12(c)."

1. In essence, these protective orders provide that any form of voluntary cooperation by the parties or County school districts will not be used as evidence in pending district court proceedings or otherwise prejudice the legal rights of any party or County school district to resist

In subdivision III of this order, we have denied the State of Missouri's motion for a stay of mandate or stay of enforcement of the district court's paragraph 12 orders. In that subdivision, we acknowledge the amendments made by the district court; we see no need to further modify our opinion of February 13, 1981. There is nothing inconsistent about paragraphs 12(a) and 12(c), and both are valid parts of the district court's order. We additionally acknowledge the protective orders entered by Judge Meredith on June 17, 1980, and October 6, 1980, were extended by Judge Hungate on March 4, 1981, and note our concurrence therewith.[1]

■ The Caldwell plaintiffs also ask this Court to clarify its decision on the allocation of costs on appeal or, in the alternative, to grant a rehearing and direct that "the costs on appeal, including attorneys' fees, be awarded against the State and St. Louis Board defendants in their favor. We decline to attempt to restate our original intentions concerning costs. Prior to the filing of this petition, the Caldwell plaintiffs made no application for attorneys' fees. We construe this petition, however, as a request for a ruling on whether they are entitled to attorneys' fees. We hold that they are not.

## III

■ On February 19, 1981, the State of Missouri[2] filed a motion requesting this Court to "stay the issuance of its mandate * * * as well as the enforcement of paragraphs 12(a), (b), and (c) of the May 21, 1980 Order of the District Court * * *, including the [district court's December 19, 1980,] supplementary order pertaining thereto * * *," pending the filing of a petition for a writ of certiorari in the United States Supreme Court. *See* Fed.R.App.P. 41(b). We deny the motion to stay our

judicial imposition of compulsory inter-district remedy.

2. For a complete listing of the state defendant-appellants in this litigation, *see Liddell v. Board of Educ.*, at 656 n.2.

mandate or to stay enforcement of the district court's orders and adhere to our most recent pronouncement concerning the State's legal responsibilities for the prompt desegregation of the St. Louis public school system. *See Liddell v. Board of Educ.*, at 650–651, 654–655.

On March 3, 1980, this Court reversed the district court's determination that the various defendants in this litigation committed no constitutional violations in the formation and perpetuation of the admittedly segregated St. Louis public school system. *Adams v. United States*, 620 F.2d 1277 (8th Cir.) (en banc), *cert. denied*, 449 U.S. 826, 101 S.Ct. 88, 66 L.Ed.2d 29 (1980). At that time, we specifically noted that the State of Missouri, the Missouri Commissioner of Education and the Missouri Board of Education were added as defendants pursuant to various district court orders in the summer of 1977. *Id.* at 1283. Moreover, we recognized that actions of the State of Missouri intensified racial segregation in North St. Louis and in the entire St. Louis area. *Id.* at 1291, 1294 n.27. The state defendant-appellants did not seek Supreme Court review of our *Adams*' decision.[3]

We remanded the case for further district court proceedings. Upon remand, the district court held that the State defendants are "primarily constitutional wrongdoers who have abdicated their affirmative remedial duty" concerning the segregated St. Louis public school system. *Liddell v. Board of Educ.*, 491 F.Supp. 351, 359 (E.D. Mo.1980). On February 13, 1981, we affirmed that determination and endorsed the desegregation plan adopted by the district court, including the provisions of paragraph 12. *Liddell v. Board of Educ.*, at 654–655.[4]

The district court amended paragraph 12 on September 17, 1980, and December 19, 1980. Unfortunately, these amendments were not included in the record submitted to this Court prior to our February 13, 1981, decision. Therefore, our February 13, 1981, decision does not discuss the district court's two amended orders. We are convinced, however, that these amendments do not alter the substance of original paragraph 12. Accordingly, we find it unnecessary to amend our February 13, 1981, decision to reflect the district court's September 17, 1980, and December 19, 1980, amendments. As amended, paragraphs 12(a)–(c) provide:[5]

12. The State defendants, the United States, and the St. Louis Board of Education are ordered and directed as follows:

a) To make every feasible effort to work out with the appropriate school districts in the St. Louis County and develop, for 1980–81 implementation, a voluntary, cooperative plan of pupil exchanges which will assist in alleviating the school segregation in the City of St. Louis, and which also insures that inter-district pupil transfers will not impair the desegregation of the St. Louis school district ordered herein, and submit such plan to the Court for approval by *December 15, 1980.*

*The State defendants, the United States, and the St. Louis Board of Education are ordered to develop a closer and more efficient cooperation among themselves for the pursuit of the objective hereof. In particular, they are directed to establish close liaison procedures and prepare concrete and specific*

---

**3.** Only one party—the Adams' plaintiffs—asked the Supreme Court to review our decision; the Court denied the petition for certiorari.

**4.** We also affirmed the district court's determination that the State of Missouri must pay one-half of the actual costs of implementing a constitutionally required desegregation plan for the St. Louis public school system.

**5.** We note that the State of Missouri has filed a notice of appeal from the December 19, 1980,

order of the district court. While we express no opinion on the merits of that appeal, we emphasize that its pendency does not relieve the parties of their responsibility to fully follow the orders of the district court.

In the quotation in the text, the amendments to paragraph 12 made by the September 17, 1980, order of the district court are indicated in italics. The amendments made by the December 19, 1980, order are underlined.

*proposals involving the county school districts and evaluate all other reasonable proposals, including any from county districts, and intensify their joint efforts. While the results disclosed in the Updating Report of the St. Louis Board of Education of September 11, 1980 are encouraging and represent some tangible achievements, a great deal more should be accomplished.*

*One of the subjects to be considered for voluntary cooperation between the City and the suburban school districts, shall be the study of the feasibility of establishing magnet schools located in suburban districts with attendance open to students of both the suburbs and the City. Consideration may be given to the expansion beyond the boundaries of St. Louis County into St. Charles and Jefferson Counties subject to limits of distance and practicality. The location of these magnet schools should be determined by agreement between the St. Louis Board of Education and the suburban school districts involved. The State and the St. Louis Board of Education will investigate the availability of funding for this program. A joint report on the status and results including the availability of technical assistance and funding of this effort should be given to the Court by the United States, the State defendants, and the St. Louis Board of Education on December 15, 1980.*

Pursuant to [this] paragraph * * *, the State of Missouri and particularly the State Board of Education and the Commissioner of Education of the State of Missouri shall submit a new Plan of voluntary and cooperative desegregation on or before February 2, 1981. The plan shall encompass each district within St. Louis County. Jefferson and St. Charles Counties shall also be included for use of magnet schools to be located in St. Louis City and County.

The State of Missouri shall report back to the Court on March 2, 1981 as to those districts in St. Louis County, Jefferson and St. Charles Counties that are willing to participate in the plan and those that are not willing to participate in the plan. The report of March 2, 1981 shall include the number of students that each district is willing to receive and those that they desire to send outside of their district, either to magnet schools in the County or in the City of St. Louis, including the race and grade of those students.

b) To develop and submit to the Court by *December 15, 1980,* a plan for the consolidation or merger and full desegregation of the separate vocational educational programs operated by the Special District of St. Louis County and the school district of the City of St. Louis, for implementation in the 1981–82 school year.

c) To develop and submit to the Court by November 1, 1980, a suggested plan of inter-district school desegregation necessary to eradicate the remaining vestiges of government-imposed school segregation in the City of St. Louis and St. Louis County.

*On or before February 16, 1981 the State defendants and the St. Louis Board of Education shall prepare and submit to the Court a feasibility plan of inter-district school desegregation involving the St. Louis school district and such suburban school districts, that will provide complete and lasting school desegregation. These considerations may apply to those suburban school districts which are not necessarily confined to the suburban districts located in St. Louis County but limited only by considerations of feasibility and practicality, including reasonableness of transportation times and distances. This feasibility plan should include educational and ancillary components such as those outlined in the Court of Appeals' opinion of March 3, 1980 in this case, and should specifically include pupil assignment and administrative reorganization provisions.*

The State's motion does not persuade us to stay our February 13, 1981, mandate. Moreover, we are satisfied that the provisions of paragraph 12, both as originally written and as amended, must be enforced. The State's motion does not raise any new issues. Indeed, we previously considered and rejected the very concerns presented in its stay motion. *See Liddell v. Board of Educ.,* at 651 (1981). In our February 13, 1981 opinion, we stressed that the State of Missouri, who has been judicially determined to be a primary constitutional violator, may properly be ordered to take steps within its power to remedy those violations. *Id.* at 651. Paragraphs 12(a)–(c) of the district court's order are salutory remedial directives and are entirely enforceable against the State in the present procedural posture of this lengthy and complicated litigation.

The State of Missouri's motion is denied. We order prompt implementation of our mandate in *Liddell v. Board of Educ.,* 667 F.2d 651.